**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

```
_____ :
ANDREA FRANKLIN, LEROY MOORE,   :
                                :  Civil Action No. 10-1467 (JLL)
            Plaintiffs,         :
                                :
        v.                      :        O P I N I O N
                                :
BOROUGH OF CARTERET POLICE      :
DEP'T, et al.,                  :
                                :
            Defendants.         :
_____ :
```

**APPEARANCES:**

Leroy Moore, <u>Pro</u> <u>Se</u>
67056
Middlesex County Adult Correctional Center
Route 130
North Brunswick, NJ 08903

**LINARES, District Judge**

Plaintiff, Leroy Moore, currently confined at the Middlesex County Adult Correctional Center ("MCACC"), North Brunswick, New Jersey, seeks to bring this action alleging violations of his constitutional rights <u>in</u> <u>forma</u> <u>pauperis</u>, without prepayment of fees pursuant to 28 U.S.C. § 1915. Based on Plaintiff's affidavit of indigence the Court will grant his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the following reasons, Plaintiff's complaint will be dismissed, without prejudice.[1]

## BACKGROUND

Plaintiff states that on August 28, 2009, defendant Carteret Police Department officers unlawfully entered the apartment of Ms. Franklin, and illegally searched the residence looking for drugs. At the time, Ms. Franklin lived there with her minor daughter, "AM". Defendant officers knocked down Ms. Franklin's door and then forced her to the ground when she asked to see a copy of the search warrant. AM, a six year old girl, was also forced to the ground. The police officers had a K-9 dog, who was barking and scaring the girl. Both Plaintiff and Ms. Franklin were arrested by the officers on municipal warrants.

At police headquarters, Ms. Franklin continued to demand to see the search warrant. Plaintiff was shown the search warrant

---

[1]  This Court notes that Plaintiff seeks to bring the complaint on behalf of the mother of his children, co-plaintiff Andrea Franklin, as well as his minor daughter, "AM". He refers to himself throughout the complaint as "movant," and to his partner, Ms. Franklin, and AM as "plaintiff." For purposes of this Opinion, Mr. Moore will be referred to as Plaintiff, since he is the filing party.

and notes its flaws in the complaint.  Plaintiff also states that
the police told him that they didn't "want to charge [Ms.
Franklin] with what [they] found so [they] will charge
[Plaintiff]."  Defendants told Plaintiff that they had him and Ms.
Franklin under a narcotics investigation for three months.
Plaintiff states that the investigation was really for him, not
Ms. Franklin, and that officers did not even know Ms. Franklin's
name until they retrieved her lease from the apartment.  Plaintiff
states that Ms. Franklin and AM "are suing each defendant for
their actions individually and in their official capacity."

Plaintiff asserts that the defendants unlawfully entered and
searched Ms. Franklin's residence without Ms. Franklin's consent
or a valid search warrant; used excessive force on Ms. Franklin
and her daughter, AM, prior to and during the arrest; deprived Ms.
Franklin and AM of free speech; took personal items from the
house; allowed the police dog to bark and scare AM; and used
excessive force by choking him by his throat stating that he had
swallowed something.

Plaintiff asks for monetary and other relief.

## DISCUSSION

### A.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No.
104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26,
1996), requires a district court to review a complaint in a civil

action in which a prisoner is proceeding in forma pauperis or
seeks redress against a governmental employee or entity.  The
Court is required to identify cognizable claims and to sua sponte
dismiss any claim that is frivolous, malicious, fails to state a
claim upon which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief.  See 28 U.S.C. §§
1915(e)(2)(B) and 1915A.  This action is subject to sua sponte
screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and
1915A, because Plaintiff is a prisoner and is proceeding as an
indigent.

    In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines
v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States
v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as
true all of the allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the light
most favorable to the plaintiff."  Morse v. Lower Merion School
Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not,
however, credit a pro se plaintiff's "bald assertions" or "legal
conclusions."  Id.

    Recently, the Supreme Court refined this standard for summary
dismissal of a complaint that fails to state a claim in Ashcroft

4

v. Iqbal, 129 S. Ct. 1937 (2009).  The Court examined Rule 8(a)(2)
of the Federal Rules of Civil Procedure which provides that a
complaint must contain "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  Citing its recent opinion in Bell Atlantic Corp. v.
Twombly, 550 U.S. 544 (2007), for the proposition that "[a]
pleading that offers 'labels and conclusions' or 'a formulaic
recitation of the elements of a cause of action will not do,'"
Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the
Supreme Court held that, to prevent a summary dismissal, a civil
complaint must now allege "sufficient factual matter" to show that
the claim is facially plausible.  This then "allows the court to
draw the reasonable inference that the defendant is liable for the
misconduct alleged."  See id. at 1948.  The Supreme Court's ruling
in Iqbal emphasizes that a plaintiff must demonstrate that the
allegations of his complaint are plausible.  See id. at 1949-50;
see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC
Shadyside, 578 F.3d 203, 2009 WL 2501662, *4 (3d Cir., Aug. 18,
2009).

**B.   <u>SECTION 1983 ACTIONS</u>**

A plaintiff may have a cause of action under 42 U.S.C. § 1983
for certain violations of his constitutional rights.  Section 1983
provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State

> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

C.   **STANDING**

Plaintiff seeks to sue on behalf of the mother of his children and his daughter.  As a preliminary matter, to the extent that Plaintiff Moore seeks to bring claims on behalf of Ms. Franklin the claims must be dismissed because Plaintiff lacks standing.

In order to have standing in an Article III court, a plaintiff must show that he: (1) personally suffered an actual or threatened injury; (2) the injury is fairly traceable to the defendant's illegal conduct; and (3) the injury is likely to be redressed by a favorable decision.  See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State Inc., 454 U.S. 464, 472 (1982); Lujan v. Defenders of Wildlife, 504 U.S.

555, 560-61 (1992).  In addition to these constitutional standing requirements, courts also recognize certain judicially-created prudential principles that further limit the Court's adjudicatory ability.[2]  See Valley Forge Christian Coll., 454 U.S. at 474 ("[b]eyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing"); see also 4 Admin. L. & Prac. § 13:14 (2d ed.) ("[p]rudential considerations are limitations on the courts' power that the judiciary itself has devised ..."). Nevertheless, even under prudential principles, a plaintiff can only assert his own rights and interests; he may not assert those of a third party.  See Warth v. Seldin, 422 U.S. 490, 499 (1975) (prudential standing requires plaintiff to assert "his own legal rights and interests"); Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 100 (1979) (prudential standing still requires plaintiff to "assert his own legal interests rather than those of third parties"); see also cf. O'Malley v. Brierley, 477 F.2d 785, 789 (3d Cir. 1973) (a plaintiff "may only assert his own constitutional rights or immunities ... one cannot sue for the

---

[2]  Prudential principles include "several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  Allen v. Wright, 468 U.S. 737, 751 (1984).

deprivation of another's rights") (internal citations and quotations omitted).

Nevertheless, the rule that plaintiffs must assert their own rights and interests in order to have standing is not absolute. See Kowalski v. Tesmer, 543 U.S. 125, 130 (2004) ("we have not treated [the above] rule as absolute. A plaintiff may have standing to assert the rights of third parties if (1) they have a "'close' relationship with the person who possesses the right" and (2) there is a "'hindrance' to the possessor's ability to protect his own interests." (quoting Powers, 499 U.S. at 411)). However, third party standing is not looked upon "favorably." Id.; Miller v. Albright, 523 U.S. 420, 422 (1998) (O'Conner, J. & Kennedy, J., concurring) (there is a "presumption against third party standing"). A parent/child relationship would seem to be a sufficiently close relationship for the purposes of third party standing. See Lewis v. Thompson, 252 F.3d 567, 585 (2d Cir. 2001) ("[a]s for prudential standing, the relationship between a parent and child is obviously close").

Injuries to a parent resulting from violations of their child's constitutional rights are not sufficiently personal for purposes of the parent's individual standing. See Hannah v. City of Dover, 152 F. App'x 114, 116-17 (3d Cir. 2005) (parents could not bring Fourth Amendment or Equal Protection claims via § 1983 for son's injuries because the parent "had not been the recipient"

8

of the injury); Denman v. Wertz, 372 F.2d 135 (3d Cir. 1967) (affirming dismissal of father's civil rights claim when police had detained and returned minor children to their mother's custody because plaintiff had not established he himself was deprived of rights); C.H. v. Olivia, 990 F. Supp. 341, 349 (D.N.J. 1997), aff'd in part, vacated in part on other grounds, 226 F.3d 198 (3d Cir. 2000) (mother had no individual standing to sue for son's constitutional injuries).

Moreover, other courts outside this circuit have held that parents do not have standing to sue in their individual capacity for incidental injuries. See Tyree v. Smith, 289 F. Supp. 174, 175 (E.D. Tenn. 1968) ("[a] father has no standing to sue for the deprivation of civil rights of his children"); E.W. v. Wake County Bd. of Educ., No. 09-0918, 2010 WL 1286215, at * 15 (E.D.N.C. February 16, 2010) (parents did not have standing to sue individually because they did not suffer a direct injury) (citing Pittsley v. Warish, 927 F.2d 3, 8-9 (1st Cir. 1991) (after police allegedly mistreated children while arresting their parents, court held "only the person towards whom the state action was directed, and not those incidentally affected, may maintain a § 1983 claim")).

Based on the foregoing, Plaintiff does not have standing to sue on behalf of Ms. Franklin, as he cannot assert third party standing for her. As noted, a plaintiff, such as Mr. Moore, may

have standing to assert the rights of third parties if (1) they have a "'close' relationship with the person who possesses the right" and (2) there is a "'hindrance' to the possessor's ability to protect his own interests." Kowalski, 543 U.S. at 130 (quoting Powers, 499 U.S. at 411). In this case, Ms. Franklin is an adult who does not appear to have a "hindrance" in her ability to protect her own interests.

**D.   EXCESSIVE FORCE CLAIMS**

As to AM, Plaintiff does have standing to assert her rights as a third party, as they are in a parent/child relationship, and AM, as a six-year-old child, possesses a hindrance, her age, to protect her own interests. However, Plaintiff has not alleged facts asserting any violation of AM's rights. Although Plaintiff asserts that the defendants used excessive force on AM, the facts he alleges state only that they scared her with the use of the dog, and that she was "forced to the ground."

A Fourth Amendment excessive force claim calls for an evaluation of whether a police officer's actions are objectively reasonable in light of the facts and circumstances confronting him. See Graham v. Conner, 490 U.S. 386, 397 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. While the question of reasonableness is objective, the court may consider the severity

of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  See id. at 396.  Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'"  Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 397).

Here, liberally construing the complaint, Plaintiff contends that the presence of the police dog barking near his daughter exceeded the bounds of what can be considered reasonable force. However, according to the complaint, it appears that the dog was not released, and there is no evidence that the dog bit scratched, or harmed anyone involved in any way.

In a similar case, the District Court of Colorado held that, the mere presence of a police dog, while intimidating, does not amount to excessive force.  See Navratil v. Parker, 726 F. Supp. 800, 803 (D. Colo. 1989).  Just like the plaintiff in that case, the plaintiff here does not assert that the police dog was used as any more than an instrument of intimidation.

Therefore, as pled, Plaintiff has not asserted sufficient facts, in light of Iqbal, to proceed past sua sponte screening with the third-party excessive force claim on behalf of his

11

daughter.  Plaintiff will be permitted to amend his complaint to address these deficiencies, in accordance with the attached order.

The only claim asserted by Plaintiff that is personal to him in this complaint is his claim of the use of excessive force against him.  Specifically, Plaintiff states that defendant Stenetella (who Plaintiff refers to as defendant "#8" in his complaint), "used excessive force choking [him] by his throat stating he swallowed something."[3]

As noted, a claim of excessive force by law enforcement officials in the course of an arrest, investigatory stop, or other seizure of a free citizen is analyzed under the Fourth Amendment's reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989); Nelson v. Jashurek, 109 F.3d 142, 145 (3d Cir. 1997);

---

[3]  If Plaintiff is attempting to assert a personal claim of an illegal search and seizure, this Court finds that it must abstain from such a ruling.  It is not generally the role of the federal courts to interfere in pending state judicial proceedings. A federal court must abstain from addressing requests for injunctive relief against state court proceedings so long as the constitutional issues involved may be addressed adequately in the course of the state proceedings.  See Younger v. Harris, 401 U.S. 37 (1971) (addressing abstention from state criminal proceedings). In this case, it appears that Plaintiff is a pretrial detainee, and there are ongoing state proceedings in which he may assert his illegal search and seizure claim.

Furthermore, if Plaintiff is not a pretrial detainee, but rather a convicted prisoner, relief is nonetheless barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994)(holding that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.")

United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997).  The
reasonableness inquiry is an objective one:  "the question is
whether the officers' actions are 'objectively reasonable' in
light of the facts and circumstances confronting them, without
regard to their underlying intent or motivation." Graham, 490
U.S. at 397; see also Mosley v. Wilson, 102 F.3d 85, 94 (3d Cir.
1996); Baker v. Monroe Tp., 50 F.3d 1186, 1193 (3d Cir. 1995).  It
"requires careful attention to the facts and circumstances of each
particular case, including the severity of the crime at issue,
whether the suspect poses an immediate threat to the safety of the
officers or others, and whether he is actively resisting arrest or
attempting to evade arrest by flight." Graham, 490 U.S. at 396.

    In this case, Plaintiff admits that defendant Stenetella
thought that Plaintiff had swallowed something, which was the
motivation behind the alleged choking.  Plaintiff does not state
that he was injured or harmed, or even that he received de minimis
injury.  As such, as pled, Plaintiff has not alleged a claim of
excessive force, and his complaint must be dismissed, without
prejudice.[4]

---

    [4]  Although Plaintiff asserts in his statement of claims that
AM and Ms. Franklins right to free speech was violated, and that
personal items were taken from the house, Plaintiff does not
assert enough facts to show that these claims are plausible.  He
simply makes these conclusory statements.  However, Plaintiff may
address these claims as to his daughter in his proposed amended
complaint if he so wishes.

13

**CONCLUSION**

Despite the above-explained shortcomings in Plaintiff's complaint, this Court will allow Plaintiff to file a motion to amend his complaint, attaching to any such motion a proposed amended complaint, which addresses the deficiencies as outlined above, on behalf of himself and/or his daughter.  Specifically, Plaintiff must adhere to the guidance by the Court of Appeals for the Third Circuit, which has explained, "the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage[ ]' but . . . 'calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  <u>Phillips</u>, 515 F.3d at 230-34 (internal citations omitted).

An appropriate order accompanies this opinion.


/s/ Jose L. Linares
JOSE L. LINARES
United States District Judge


Dated: Nov. 15, 2010

14